J-S49004-17

2017 PA Super 283

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIANTE HILLIARD | : | No. 887 WDA 2016 |

Appeal from the Order May 27, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No.: CP-02-CR-0013040-2015

BEFORE: DUBOW, J., SOLANO, J., and FITZGERALD J.[*]

OPINION BY DUBOW, J.:                                    **FILED AUGUST 31, 2017**

The Commonwealth appeals from the trial court's May 27, 2016 Order[1]

entered by the Allegheny County Court of Common Pleas dismissing all

charges against Appellee, Giante Hilliard.  After careful review, we reverse

the trial court's May 27, 2016 Order and remand for further proceedings.

On August 22, 2015, a vehicle pulled up beside Anthony Baltimore as

he was walking to work near a fire station in Pittsburgh.  Someone in the

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that the Commonwealth purports to appeal from the trial court's
May 26, 2016 Order.  Although this reflects the date on which the trial court
signed the Order and sent the Order to the parties, the certified record
shows that the Order was not entered on the docket and filed until May 27,
2016.  **See** Pa.R.A.P. 301(a)(1) (providing that "no order of a court shall be
appealable until it has been entered upon the appropriate docket in the
lower court.").  We have changed the caption accordingly.

vehicle wearing a hoodie shot at Baltimore, hitting him nine times.[2] An ambulance responded and transported Baltimore to the hospital.

Pittsburg Police Homicide Detective Edward Fallert, after learning of the shooting, entered the triage unit in the emergency room. He observed Baltimore on a gurney with his clothing removed, hooked up to several different machines, with nine hospital staff members discussing Baltimore's gunshot wounds to his trunk. Detective Fallert learned that Baltimore was losing a lot of blood internally, and the hospital staff members were preparing Baltimore for emergency surgery and about to rush him into the operating room. Detective Fallert stated that he believed Baltimore "wasn't going to make it." N.T., 10/20/15, at 18.

Detective Fallert followed Baltimore as he was being rushed from the triage unit to the operating room and asked Baltimore who had shot him. Baltimore stated that Giante Hilliard ("Appellee") had shot him. The hospital staff members then rushed Baltimore into emergency surgery in the operating room. Baltimore survived.

That same day, Detective Fallert learned that Appellee was in the same hospital with a gunshot wound to his hand. Detective Fallert entered Appellee's room and observed the wound. After verbally giving Appellee

---

[2] Baltimore suffered gunshot wounds to his back, neck, arms, legs, and abdomen.

***Miranda***[3] warnings, Detective Fallert asked Appellee to describe how and where he had been shot. Appellee told Detective Fallert that he was "a passenger in a vehicle when an unknown person fired a gun from outside the vehicle and struck him in the hand." N.T., 10/20/15, at 22. Appellee then was dropped off at the hospital for treatment. ***Id.***

The Commonwealth arrested Appellee and charged him with one count of Criminal Attempt (Homicide), one count of Aggravated Assault, and one count of Carrying a Firearm Without a License.[4]

On October 20, 2015, at Appellee's Preliminary Hearing, the Commonwealth called Baltimore and Detective Fallert to testify. Baltimore testified about the shooting, the extent of his injuries, and his continued medical treatment. Baltimore did not identify Appellee as the shooter, and claimed that he "really couldn't see who was in the vehicle" or who had shot him. Baltimore twice stated that "[t]here was a hoodie over his [the shooter's] head." N.T., 10/20/15, at 5, 7. Baltimore testified that he remembered speaking to officers at the hospital, but he did not recall what he told them about who had shot him.

Over Appellee's hearsay objections, Detective Fallert testified about Baltimore's statement and the surrounding circumstances, as well as his

_____

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[4] 18 Pa.C.S. § 901, 18 Pa.C.S. § 2702, and 18 Pa.C.S. § 6106, respectively.

interaction with Appellee in the hospital. The court ultimately admitted Detective Fallert's testimony regarding Baltimore's statement identifying Appellee as the shooter as an excited utterance, but did not opine on the Commonwealth's argument that the statement constituted a dying declaration.[5]

At the end of the Preliminary Hearing, Appellee argued that the Commonwealth did not establish a *prima facie* case against him because it relied solely on hearsay evidence to prove his identity as the shooter. He claimed that the admission of the statement violated his confrontation rights because Baltimore did not remember making the statement to Detective Fallert. Appellee further argued this evidence was unreliable because it conflicted with Baltimore's testimony. The Honorable Hugh F. McGough held the case for trial, concluding that the Commonwealth had met its burden and had established the *prima facie* case.[6]

---

[5] **See** Pa.R.E. 803(2) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: … A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."); Pa.R.E. 804(b)(2) ("The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: A statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances.").

[6] The court dismissed one count of Carrying a Firearm Without a License, 18 Pa.C.S. § 6106.

On March 3, 2016, Appellee filed a written Petition for Writ of *Habeas Corpus* based solely on the issue of Baltimore's statements arguing that the Commonwealth failed to establish a *prima facie* case because the victim testified at the Preliminary Hearing that he did not see who shot him. On March 23, 2016, the Honorable Randal B. Todd conducted a hearing on Appellee's Petition for Writ of *Habeas Corpus*. At the hearing, Appellee also argued that (1) Baltimore's statement to Detective Fallert identifying the shooter did not qualify as admissible evidence under the excited utterance exception or the dying declaration exception to the hearsay rule, and (2) this evidence was testimonial hearsay, which violated the Confrontation Clause. Appellee argued that the trial court should essentially reassess and overturn this evidentiary ruling, conclude that the Commonwealth failed to establish a *prima facie* case, and dismiss all charges as a result. N.T., 3/23/16, at 5-7. The trial court took the matter under advisement and the parties submitted briefs.

On May 27, 2016, Judge Todd granted Appellee's Petition for Writ of *Habeas Corpus* and dismissed all charges.

On June 21, 2016, the Commonwealth filed a Notice of Appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.[7]

_____

[7] In its Pa.R.A.P. 1925(a) Opinion, the trial court carefully considered the admissibility of Detective Fallert's testimony about Baltimore's hospital statement identifying Appellee as the shooter before concluding that the
*(Footnote Continued Next Page)*

The Commonwealth presents one issue for our review:

Whether the trial court erred in granting the Petition for Writ of *Habeas Corpus*?

Commonwealth's Brief at 4.

The Commonwealth first challenges the trial court's authority to revisit Judge McGough's evidentiary rulings given the narrow standard and scope of review of a Petition for Writ of *Habeas Corpus* when considering the sufficiency of the evidence presented at a preliminary hearing. Commonwealth's Brief at 14.

"In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error." ***Commonwealth v. Santos***, 876 A.2d 360, 363 (Pa. 2005) (internal quotation and citation omitted). "A trial court may grant a defendant's petition for writ habeas corpus [after a preliminary hearing] where the Commonwealth has failed to present a *prima facie* case against the defendant." ***Id***.

*(Footnote Continued)* ───────────────

statement did not qualify as either an excited utterance or a dying declaration. Moreover, the trial court concluded the admission of these statements violated the Confrontation Clause and ***Crawford v. Washington***, 541 U.S. 36 (2004), because Detective Fallert's purported interrogation rendered the statement testimonial in nature. The trial court did not address the propriety of its reconsideration of these evidentiary rulings in the context of a Petition for Writ of *Habeas Corpus*.

The basic principles of law regarding the establishment of a *prima facie* case at a Preliminary Hearing are well settled. "The preliminary hearing is not a trial." ***Commonwealth v. Weigle***, 997 A.2d 306, 311 (Pa. 2010). "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." ***Id.*** "At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." ***Id.***; Pa.R.Crim.P. 542(D).

"At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt[.]" ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa. 2003) (citation omitted). "A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes **probable cause** to warrant the belief that the accused committed the offense." ***Weigle, supra*** at 311 (emphasis added, quotation marks omitted). "Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect." ***Santos***, ***supra*** at 363.

In addition, "the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury." ***Commonwealth v. Landis***, 48 A.3d 432, 444 (Pa. Super. 2012) (quotation, citation, and boldface omitted). "The standard clearly does not

require that the Commonwealth prove the accused's guilt beyond a reasonable doubt at this stage." *Id.* (citation and quotation omitted). Most significant in this appeal, "[t]he weight and credibility of the evidence is not a factor at this stage." *Id*.

Importantly, this Court has held in the post-trial context that, when "evaluating the sufficiency of the evidence, we do not review a diminished record." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005) (citation omitted). "Rather, the law [provides] that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Id.* (citation omitted). "Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense[.]" Pa.R.Crim.P. 542(E).[8]

_____

[8] This Court recently reviewed the 2013 amendment to Pa.R.Crim.P. 542, which permitted the Commonwealth to establish, *via* hearsay, any element of an offense for purposes of determining whether a *prima facie* case has been established that the actor committed a criminal offense. *See Commonwealth v. Ricker*, 120 A.3d 349 (Pa. Super. 2015), *appeal granted*, 135 A.3d 175 (Pa. 2016). We held in *Ricker* that Rule 542 did not run afoul of the constitutional right to confront witnesses under either the Pennsylvania Constitution or the United States Constitution. The case was argued before the Pennsylvania Supreme Court in December of 2016. To date, no decision has been issued. "It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." *Commonwealth v. Pepe*, 897
*(Footnote Continued Next Page)*

This Court has previously criticized the grant of a petition for writ of *habeas corpus* where the reviewing court concluded that evidence produced at the preliminary hearing "might be subject to exclusion at trial" and therefore disregarded the evidence in assessing the sufficiency of the evidence produced at the preliminary hearing. ***See, e.g., Commonwealth v. Keller***, 823 A.2d 1004 (Pa. Super. 2003), *abrogated on other grounds by* ***Commonwealth v. Dantzler***, 135 A.3d 1109 (Pa. Super. 2016) (holding that this Court in ***Keller*** improperly applied an abuse of discretion standard of review). The Court in ***Keller*** concluded that dismissing the charges was an improper remedy given the procedural posture of a pretrial writ of habeas corpus because "the trial court deprived the Commonwealth of any possibility of proving its case by other legally obtained evidence (if there was any)." ***Id.*** at 1012 n.5. Further, this Court noted "that the prosecution will not be able to prove its case at trial as a result of a suppression order . . . is not a basis . . . for granting a pretrial writ of *habeas corpus*." ***Id.***

Here the trial court concluded that the Commonwealth failed to establish a *prima facie* case. Our review of the record indicates that the trial court's grant of Appellee's Petition for Writ of *Habeas Corpus* is not supported by the record and is based on improper legal conclusions.

*(Footnote Continued)* _____

A.2d 463, 465 (Pa. Super. 2006) (internal citations omitted). Accordingly, this Court's prior decision in ***Ricker*** is binding.

Rather than reviewing the Preliminary Hearing transcript in conjunction with all of the evidence presented at the Preliminary Hearing to determine whether the "Commonwealth produce[d] evidence of each of the material elements of the crime charged and establishe[d] probable cause to warrant the belief that the accused committed the offense[s,]" the trial court considered a diminished record when considering Appellee's Petition for Writ of *Habeas Corpus*. **Weigle, supra** at 311.

The Commonwealth offered the statement at issue, which the court admitted at the Preliminary Hearing. Thus, in ruling on the Petition for Writ of *Habeas Corpus*, the court was bound to consider this evidence in determining whether the Commonwealth met its *prima facie* burden. **Gray**, **supra** at 567. The failure to do so constituted a misapplication of the scope of review and relevant legal standards. ***Id.*** As a result, the extreme remedy of dismissing all charges was erroneous. We are constrained to reverse on this basis.[9]

We next address the Commonwealth's remaining argument that the trial court erred in concluding that the Commonwealth failed to present a *prima facie* case against the defendant given the entirety of the evidence submitted during the Preliminary Hearing. Commonwealth's Brief at 19.

_____

[9] Given our resolution, standard of review, and scope of review, we do not address the merits of whether the statement identifying Appellee as the shooter met a hearsay exception or constituted testimonial hearsay admitted in violation of the Confrontation Clause.

It is well-settled that "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005). "Furthermore, our scope of review is **limited** to determining whether the Commonwealth has established a *prima facie* case." ***Commonwealth v. Heckman***, 66 A.3d 765, 768 (Pa. Super. 2013) (emphasis added).

Appellant was charged with one count of Criminal Attempt (Homicide) and one count of Aggravated Assault. Pursuant to Pennsylvania statute, "[a] person commits attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901. Further, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501. Additionally, "[t]he use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill." ***Commonwealth v. Randolph***, 873 A.2d 1277, 1281 (Pa. 2005).

With respect to the charge of Criminal Attempt (Homicide), the Commonwealth was required to present evidence to show that Appellee committed a substantial step toward "intentionally, knowingly, recklessly or negligently caus[ing] the death of another human being." 18 Pa.C.S. § 2501. Relevant to this case and the identity of the shooter, the

Commonwealth needed to establish "probable cause to warrant the belief that the **accused** committed the offense." **Weigle, supra** at 311 (emphasis added).

The Commonwealth presented evidence that a male wearing a hoodie pulled up next to Baltimore in a vehicle and shot him nine times in the back, neck, arms, legs, and abdomen. Baltimore testified about his substantial injuries, for which he continues to receive medical treatment. Detective Fallert testified about Baltimore's life-threatening situation in the hospital and Baltimore's statement identifying Appellee as the person who shot him. Detective Fallert also testified about his interaction in the same hospital on the same day with Appellee, who was also receiving treatment for a gunshot wound to his hand.

Considering this evidence in the light most favorable to the Commonwealth, as we must, the Commonwealth's evidence at the Preliminary Hearing sufficiently established each element of Criminal Attempt (Homicide) for purposes of showing the existence of a *prima facie* case. Baltimore testified about the nature of his nine gunshot wounds to vital parts of his body, which constituted serious bodily injury for which he continues to receive medical treatment. It is reasonable to infer the shooter's intent from both the number of gunshot wounds he inflicted and the use of a deadly weapon upon a vital part of the victim's body. **See Randolph**, **supra** at 1281. The act of shooting at Baltimore at least nine

times constitutes the commission of a sufficient substantial step that supports the attempt aspect of this charge. Moreover, for purposes of establishing a *prima facie* case at the preliminary hearing stage of the proceedings, the Commonwealth adequately established Appellee's identity through Detective Fallert's testimony about Baltimore's hospital statement, the evidence of Appellee's own suspicious statements to Detective Fallert in the hospital, and Detective Fallert's observation of the gunshot wound to Appellee's hand under suspicious circumstances at the same time on the same date.

"A person is guilty of [A]ggravated [A]ssault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines "Serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

With respect to the charge of Aggravated Assault, the Commonwealth relied on the same evidence to establish at least a *prima facie* showing of each element of Aggravated Assault as to show Attempted Homicide. Aggravated Assault is a lesser-included offense of Criminal Attempt (Homicide) for sentencing purposes when premised on the same act.

***Commonwealth v. Anderson***, 650 A.2d 20, 24 (Pa. 1994) (holding that Aggravated Assault is a lesser-included offense of Attempted Murder in the context of merger at sentencing). As a result, we need not separately address this charge. The Commonwealth's proof of Criminal Attempt (Homicide) was legally sufficient as a matter of law to support Aggravated Assault.

Accordingly, we conclude that, with respect to each charge, the Commonwealth met its "burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." ***Weigle***, ***supra*** at 311.

Appellee has argued, and argues again in his Brief, that the trial court's decision properly resolved an essential contradiction in the evidence.[10] Any conflicts or discrepancies in the evidence, which are questions regarding the weight and credibility of evidence, must be resolved by the fact-finder at trial, not at the Preliminary Hearing. ***See Landis***, 48 A.3d at 448 (holding that "it is inappropriate for the trial court to make credibility determinations in deciding whether the Commonwealth established a *prima facie* case.").

_____

[10] Baltimore, who was shot in the back, testified at the Preliminary Hearing that he did not see who shot him, which contradicted Detective Fallert's testimony at the Preliminary Hearing that Baltimore recalled and stated that Appellee had shot him. Appellee's Brief at 8 n.3; N.T., 3/23/16, at 6.

Here, in granting the Writ of *Habeas Corpus*, the trial court improperly weighed the evidence. ***See*** Trial Court Opinion, filed 1/17/17, at 2 (describing that Baltimore testified that he did not recall making any statements in the hospital when he in fact remembered speaking with officers but did not recall **what** he told them about the shooting); ***id.*** at 8-9 (discussing whether Baltimore remembered the shooting and who shot him); ***id.*** at 11-12 (describing deficiencies in the record about the circumstances of Baltimore's statement to Detective Fallert rendering the statement testimonial). The trial court omitted mention of Detective Fallert's testimony about his interactions with Appellee at the hospital. ***See*** Trial Court Opinion, filed 1/17/17, at 2.

In doing so, the trial court assumed the responsibilities of a fact-finder in order to resolve conflicts in the evidence. That is not the function of a court at either a preliminary hearing or when considering whether to grant a writ of *habeas corpus* after a preliminary hearing. ***See Weigle***, ***supra*** at 311.

After reviewing the evidence presented at the Preliminary Hearing in the light most favorable to the Commonwealth, we conclude that the Commonwealth met its burden of establishing at least a *prima facie* case "that a crime has been committed and that the accused is probably the one who committed it." ***Weigle***, ***supra*** at 311. To view the evidence otherwise

would be to view it in the light most favorable to Appellee, which is contrary to our standard and scope of review.

Accordingly, we reverse the trial court's May 27, 2016 Order, direct the court to reinstate the charges, and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Solano joins the Opinion.

Justice Fitzgerald concurs in result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2017