J. S12041/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                 :            PENNSYLVANIA
                  v.                        :
                                                    :
ANGEL LUIS ALICEA III,              :            No. 1129 MDA 2017
                                                    :
                Appellant         :

Appeal from the Judgment of Sentence, May 2, 2017,
in the Court of Common Pleas of York County
Criminal Division at No. CP-67-CR-0001279-2016

BEFORE: LAZARUS, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED AUGUST 07, 2018**

Appellant, Angel Luis Alicea, III, appeals from the judgment of

sentence entered May 2, 2017, in the Court of Common Pleas of York County

following his conviction in a jury trial of drug delivery resulting in death and

possession with intent to deliver ("PWID").[1] The trial court sentenced

appellant to 9-20 years' incarceration. After careful review, we affirm.

The trial court provided the following factual and procedural history:

> On September 18, 2015, around 1:20 p.m., the
> Northern York County Regional Police Department
> responded to the residential address of 7464 Hillside
> Drive, Paradise Township, York County after
> receiving a call from Ms. Briana Clapsaddle that she
> found her boyfriend, Randy Crone (herein "Crone"),
> inside the residence, in his bedroom, deceased.
> Ms. Clapsaddle had driven to Crone's residence after
> he failed to respond to multiple text messages and

---

[1] 18 Pa.C.S.A. § 2506(a) and 35 P.S. § 780-113(a)(30), respectively.

telephone calls from the previous night, September 17, 2015, and that morning.

Detective William Haller and Detective Sargent Neidigh responded to the scene. While investigating Crone's bedroom, the detectives found three (3) syringes, a burnt metal spoon with a small amount of suspected heroin residue, and a small folded one-dollar ($1.00) bill with a brown powdered substance inside which the detectives determined to be heroin. The one-dollar ($1.00) bill, which was described by police to be folded tightly in the shape of a triangle, was found inside an Alcoholics Anonymous book located on top of Crone's dresser.

Family members of Crone told responding officers that Crone was a recovering heroin addict who recently attended rehab in an effort to overcome his addiction. Crone's family did not know he was using heroin on the date of his death. Crone's sister, Samantha Rengifo, advised investigators that Crone visited her at her residence on the morning of September 17, 2015, and brought her doughnuts. Samantha stated that Crone told her that after he left Samantha's residence he was going to go visit Ms. Clapsaddle. Ms. Clapsaddle confirmed that Crone had spent the majority of the remainder of the day with her, attending appointments and running errands. Ms. Clapsaddle testified that they were together from about 10:00 a.m. in the morning until 7:30 p.m. that night. Ms. Clapsaddle stated she last heard from Crone around 9:00 p.m. or 9:30 p.m. on the night of September 17, 2015, via text messages after he had left her residence. Officers were able to confirm receipts, which established that Crone had been at Dunkin Donuts on September 17, 2015, at 6:45 a.m., Wal-Mart at 9:25 a.m., and Giant at 9:42 a.m.

By reviewing Crone's cellphone records, investigators determined that Crone had been in contact with his best friend, Michael Iberl, on the night of September 17, 2015. Mr. Iberl testified that Crone had in fact reached out to him in regards to wanting

heroin and they did obtain heroin just after midnight on September 17, 2015. Mr. Iberl stated that he reached out to a dealer known as "Bebo," and he and Crone drove to Bebo's location to purchase heroin. Mr. Iberl testified that he contributed twenty dollars ($20.00) and Crone contributed eighty dollars ($80.00) towards the single purchase of one-hundred dollars ($100.00) of heroin. Mr. Iberl estimated the amount of heroin purchased to weigh at least one (1) gram and it was packaged in a folded dollar bill. Bebo was later identified as being [appellant.]

Mr. Iberl stated that after obtaining the heroin, just before 1:00 a.m., Crone dropped Mr. Iberl off at his grandparents' house, his residence at the time, so Mr. Iberl would not break the curfew rules set by his grandparents. Crone drove to Walgreens to buy syringes and then returned to Mr. Iberl's residence about fifteen (15) minutes later. Once there, Mr. Iberl testified that both he and Crone both shot up twice (2) using the heroin they bought. Mr. Iberl stated that he then went to sleep but he was unsure if Crone had fallen asleep as well. Mr. Iberl stated that Crone dropped him off at work on September 17, 2015, around 6:00 a.m., and Crone took the remainder of the heroin with him, still packaged in the dollar bill.

At the time of his death, Crone was living with his aunt and uncle. After leaving Ms. Clapsaddle's house, Crone returned to his residence just after 8:00 p.m. on September 17, 2015. Crone briefly watched television with his uncle before returning to his room, which was located in a walk-out basement. This was the last account of anybody seeing Crone alive. Ms. Clapsaddle discovered Crone deceased in the afternoon of September 18, 2015. Upon examination, it was ruled that Crone's death was accidental and caused by heroin toxicity. On January 25, 2016, Detective William D. Haller from the Northern York County Regional Police Department filed the charges listed *supra*.

On March 16, 2017, at the conclusion of the trial, a jury unanimously convicted [appellant] of Drug Delivery Resulting in Death and [PWID].

On May 2, 2017, [appellant] was sentenced to a term of nine (9) to twenty (20) years' incarceration in [s]tate [p]rison for the charge of Drug Delivery Resulting in Death and no separate sentence for the [PWID] charge since said charge merged with the first charge. On May 8, 2017, [appellant], by and through his attorney, Ronald J. Gross, Esquire, filed a Post-Sentence Motion requesting that [appellant's] sentence be vacated based on a sufficiency of the evidence and weight of evidence claim, as well as a claim that the statute [appellant] was convicted under, 18 Pa.C.S.A. § 2506(a) was unconstitutionally vague and overbroad. On June 6, 2017, [the trial c]ourt denied [appellant's] Post Sentence Motion.

On July 18, 2017, [appellant] filed a Petition to Accept Late Direct Filing of Appeal/Appeal **Nunc Pro Tunc** due to a filing error on the part of [appellant's] attorney. On July 25, 2017, [the trial c]ourt granted [appellant's] Petition to Appeal **Nunc Pro Tunc** and ordered [appellant] to file a 1925(b) Statement of Errors Complained of on Appeal. Both orders were filed on July 26, 2017.

Trial court opinion, 10/17/17 at 2-7 (citations omitted).

Appellant filed his concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on August 22, 2017. The trial court then filed an opinion pursuant to Pa.R.A.P. 1925(a) on October 17, 2017.

Appellant raises the following issues on appeal:

I.    Whether the [t]rial [c]ourt erred by finding that sufficient evidence existed to support the conclusion by the jury that [a]ppellant sold hereon [sic] to Mr. Crone when in fact Michael Iberl provided the heroin to the decedent[?]

- 4 -

II.     Whether the Trial Court erred by not granting a new trial as there existed insufficient evidence that the heroin, even if presumed provided by [appellant], would have caused the death of Mr. Crone as after he admittedly used all the heroin, as per the report of Mr. Iberl at trial, he (Mr. Crone) was still alive[?]

III.    Whether the Drug Delivery Resulting in Death statute as codified in 18 Pa.C.S.A. § 2506(A) is unconstitutionally vague, facially and as applied, because it creates a strict liability for actions negating **mens re** [sic] therefore violating the due process clause of the [F]ourteenth [A]mendment to the U.S. Constitution ARTICLE 1, SECTION 9, of the Pennsylvania Constitution[?]

Appellant's brief at 5.

Appellant's first two issues address the sufficiency of the evidence presented by the Commonwealth. We shall review both of these issues together. In his first issue, appellant avers that the Commonwealth failed to establish that appellant sold heroin to Crone when it was Iberl who provided Crone with the heroin. (Appellant's brief at 10.)

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact-finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to a crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

> Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for the fact finder; if the record contains support for the convictions, they may not be disturbed.

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa.Super. 2013), ***appeal denied***, 89 A.3d 661 (Pa. 2014) (citations omitted).

> Moreover, when applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact, while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa.Super. 2011) (citations omitted), ***appeal dismissed***, 54 A.3d 22 (Pa. 2012).

We first review appellant's contention that the Commonwealth failed to prove that he sold heroin directly to Crone.  Section 2506 of the Crimes Code provides, in relevant part:

> A person commits a felony of the first degree if the person intentionally . . . delivers, . . . sells or distributes any controlled substance . . . in violation of . . . The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a).

Appellant's entire argument is as follows:

> The evidence at trial, taken as true in the light most favorable to the verdict winner, shows that Mr. Iberl arranged a drug deal, procured money before meeting [a]ppellant, handed the money to [a]ppellant and [a]ppellant gave the heroin to him. At no time was Mr. Crone involved in the discussion,

> arrangement or transaction regarding drugs. Mr. Iberl did not die after having said drug dispensed to him. Therefore, the evidence is not sufficient to support a conviction.

Appellant's brief at 11.

This case is analogous to **Commonwealth v. Storey**, 167 A.3d 750 (Pa.Super. 2017). In **Storey**, the defendant intentionally sold heroin to an individual, who subsequently gave the heroin to the decedent. **Id.** at 758. The court found that the evidence established that the heroin that the defendant sold ultimately caused the death of the decedent. **Id.** The court held that the Commonwealth need only prove beyond a reasonable doubt that the defendant "(i) intentionally sold a controlled substance, and (ii) the death of another person resulted from this sale." **Id.** citing 18 Pa.C.S.A. § 2506(a). The statute does not mandate that the Commonwealth prove that the defendant sold a controlled substance to the person whose death results from the sale. **Storey**, 167 A.3d at 757-758.

Turning to appellant's second sufficiency issue, appellant argues that the Commonwealth failed to establish that the heroin appellant sold to Iberl caused Crone's death. Specifically, appellant relies on the fact that Crone was alive after "ingesting the remaining heroin that allegedly came from [a]ppellant." (Appellant's brief at 12-13.) Put another way, appellant is relying on the fact that Iberl's testimony reveals that Crone's heroin usage did not instantly result in his death.

In his brief, appellant explicitly admits intentionally selling heroin to Iberl. (**See** appellant's brief at 11, **supra**.) As stated above, it is of no relevance that appellant did not sell the heroin directly to Crone. The record also reflects that Crone died of heroin toxicity. The Commonwealth presented evidence from Dr. Rameen Starling-Roney, a forensic pathologist, who opined that Crone's cause of death was heroin toxicity. (Notes of testimony, 3/15/17 at 194.) Dr. Starling-Roney also testified that a heroin overdose may not immediately cause death—rather, an individual could die from an overdose within "minutes to hours." (**Id.** at 201.)

We therefore find, after viewing the evidence in the light most favorable to the Commonwealth, that the Commonwealth sufficiently established beyond a reasonable doubt that appellant ultimately provided the heroin that caused Crone's death. Accordingly, appellant's first two issues are without merit.

In his third and final issue, appellant avers that Section 2506 is unconstitutionally vague "because it creates a strict liability for actions negating **mens re** [sic]," and in so doing, violates the Fourteenth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. (Appellant's brief at 14.)

Here, appellant makes an incoherent argument stating that the "reasoning, dicta and holding in [this court's decision in **Commonwealth v.**] **Kakhankham**[, 132 A.3d 986 (Pa.Super. 2015), **appeal denied**, 138 A.3d

4 (Pa. 2016),] is the precise reasoning necessary for [this panel] to rule that there is vagueness and violation of due process in the statute as written." (Appellant's brief at 18.)  Appellant fails to distinguish this case from **Kakhankham**, which rejected the precise constitutional arguments presented herein, nor does he cite to any authority from either the Supreme Court of Pennsylvania or the Supreme Court of the United States reversing our holding in **Kakhankham**.  Instead, appellant forwards an irrelevant argument about a defendant's **mens rea** and liability within the context of simple assault.  (**See** appellant's brief at 18-19.)

"It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court."  **Commonwealth v. Hilliard**, 172 A.3d 5, 10 n.8 (Pa.Super. 2017), quoting **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa.Super. 2006) (internal citations omitted).  Accordingly, our precedent in **Kakhankham** is binding on this court, and appellant's third issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2018